Judge Logan
delivered the opinion of the court.
This was a suit in chancery, brought by the appellants, to recover from the representatives of George Mansell, deceased, a legacy bequeathed to Mrs. Brown by Samuel Mansell, her father, and also from Robert Wickliffe, one of the appellees, certain slaves, which the appellants claim under the will of Susanna Welsh, the mother of Mrs. Brown.
In the year 1779, Samuel Mansell died, having, by his last will, bequeathed to his daughter Margaret, (now appellant,) 1350, Maryland currency, and after making *338 sundry other bequests, gave to his son George all tlie net-idue of his estate; and appointed his wife and son the ex-ecutnx and executor of bis wiJR
This will was duly proven and admitted to record before the register of wills, in the county of Ann-Arundel, in the state of Maryland, on the i(5th davof August, 1779: and, on the same day, the widow appeared and claimed her dower and one third of the personal estate, according to law.
On the 21st of September, in the same year, an ap-praisement of the goods and chattels óf the testator was made out, amounting to £605 2 9; andón the 12th of April, 1780, Susanna Mansell, the executrix, returned the inventory thereof, on oath, to thé register of wills, comprehending therein the slaves of the testator.
In the course of that year, she intermarried with John Welsh, who died shortly thereafter, and she survived a few years only, leaving her last will and testament, wherein she bequeathed to Margaret, her daughter, the slaves, Jack and Lucy, two of those mentioned in the inventory aforesaid, fes belonging to the estate of her former husband.
This will was proved and admitted to record on the 11th davof August, 1784.
It is from this will, that the appellants derive their claim to the slaves in contest:
By the laws of Maryland the widow might, as she appears to have done iñ thé present case, claim one third part of the personal estate of her husband, including the sla ves'; to jvhich proportion, after the payment of debts and a final settlement of the administration with the commissary court, she becomes entitled. But such a settlement of the administration of the estate had not been made, nor thfe debts of Samuel Mansell paid, during the life of Mrs. Welsh.
It is, however, upon an aliedged division of the slaves, that the appellants found their right to those in question. To this it is responded, 1st. That there was no agreement by George Mansell, whereby the absolute right to any of the slaves would vest in thé widow; and 2d. That an agreement of that nature would, by the laws of Maryland, have been void.
With respect to the first proposition, several witnesses depose as to the division of the slaves. But it is by no means satisfactory, from the whole evidence, what was intended to be the extent of that division, whether it related *339 aniy to a temporary use of the slaves, or to an absolute right, to them. Nor do the witnesses seem perfectly to accord in opiuion with respect to the manner of the division, whether it was done by others, acting under the mandate of the law, or was made between the parties at their own instance, as an agreement to settle and finally to adjust, what might, possibly, thereafter become the subject of dispute between them.
The division is said to have been made in the fall of the same year that the testator died; and the persons stated to have been present, were those by whom the estate was appraised in September. But it appears that about this period, George Mansell was under age, according to the laws of Maryland. Even in April following, the only inventory which had been returned of the goods and chattels belonging to the estate, was sworn to and reported by his mother alone; from which circumstance, connected with the testimony in the cause, it is quite probable he still remained under age.
Suppose, then, the division to have been made in the fall, 1819, and it would seem to have been made during his minority; so that, if made by him, it is shetvn by the complainants’ own witnesses, that be was not capable, agreeably to their own laws, of making ah agreement of the kind: the inference, at least, under the circumstances of the ease, is too stroug, to justify a decree in their favor upon that agreement. And if the division was made by others, it is not shewn from what authority it was done; nor could it, according to their laws, have vested the absolute property in the widow, until a settlement of the administration had been made with the commissary court.
It is not doubted, that Mrs. Mansell continued to hold in possession those slaves. As an executrix, as well as the widow of the testator, she had á right to do so. But the possession With her would no more, than with George Man-sell, imply the assent of the co-executor to transfer the absolute right of property, in opposition to a fiduciary claim for the payment of debts. Hence the property so held would, in her hands, as well as that which remained in the hands'of G. Mansell, have been subject to debts of the testator, and still within the control of the surviving executor for that purpose.
The evidence to justify a decree in favor of a'recovery, p4er circumstances like the present, ought, to be extremely *340 clear and convincing. George Mansell had, for upward? £>f twenty years after the deáth of his mother, been possessed of those slaves, and died possessed of them. During almost the whole, if not all that time, the appellants might have commenced suit in any year for them. But it. does not appear that they ever asserted this claim, until after the death of Mansell, and public creditors had threatened the property. Under circumstances, then, like these, the proof ought, surely, to be strong, clear, and free from all rational doubt.
It may not be improper to observe, that had the claim of the appellants been founded solely on the agreement of George Mansell to give up those slaves to the widow, and pn her will, that this court would have thought it a case purely legal, and of which a court of equity ought not to take jurisdiction.
But as the widow was entitled to one third of the personal estate after the payment of debts, it might still have been the subject of contest, whether, if upon a fair settlement of the estate, though after her death, there remained a surplus fund, her heirs or legatees would not have been entitled thereto; and the complainants thus shew a proper ground for relief in chancery?
This enquiry is necessarily involved in the question, whether the estate of Samuel Mansell had been exhausted in the payment of his debts? v
It has already been shewn, that from the appraisement as returned in April, 1780, the personal estate amounted to idea 2 9. ■
The first settlement of the accounts of the administration, was made by George Mansell in the year 1788, when he obtained with the commissary court a credit of Z201 3 7, leaving a balance at that time in favor of the estate of ¿403 11 9|. Upon a second settlement, obtained in October, 1791, there was passed to his’credit the further sum of /192 7 4|-, leaving then abalance against him of Z211 11 9j. And in another settlement, which was made in 1793, the executor charged himself with sundry other sums, producing an aggregate against him of Z433 1 10|. But in that settlement, he procured a credit for various disbursements amounting to Z519 17 2, producing abalance in his favor of Z86 15 3*.
Thos^, accounts for disbursements, were rendered upon Path, and passed by the officer with whom such business *341 was entrusted; where; until the commencement of this suit since the death of the executor, they have remained undisturbed; and where,'Without the most satisfactory evidence of a subsisting right, they ought not to be opened and ripped Up as transactions founded in fraud.
In a stale de, ⅛⅞-⅛ selling an exec’rs account b”*°e® (r¿be mj^he fraud should be ve-^ewnFj,e'y7 ference.
flaggin for plaintiff, Wickliffe for defendants in error.
The sales of the land and of tobacco on hand, amounting, it is said, to about 1800, it is contended have not bee» accounted for by the executor.
These charges and the parpl proof in the cause, seem to justify the presumption, that there had been fraud or palpable neglect on the part of the executor, to the postponement of pecuniary legacies. But it appears from the account rendered in 1793, that the executor charges hjmself with 1100, continental money, received of Henrv Eaton; 1600 received of Reuben Merriwether; and 1700 due by him to the estate of his father;’ with some other sums, embracing a former credit in his favor for sums which were deemed desperate debts, making in all 11402 15, continental money; which, in the settlement, was scaled at twenty for me, leaving only 160 2 9 — and 126 6 4, foy debts which he had before returned as desperate.
From these facts, what is there in the cause lo show, that the sums received by the executor were not in conti-hental of paper money? Or that the depreciation was not as charged in the settlement with the commissary court? ftrthal the sums of 11402 15, and of 126 6 4, did not cover all the estate, with which the executor was chargeable, and of which he had not before rendered an account? It is believed that such evidence as ought, under the staleness of this demand, to set at naught the settlements to attach fraud to the transactions, ánd demand the relief sought, is not before the court. We concur, therefore, with the court below in the dismissal of the bill.
The decree affirmed with cost.